UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUNE ROY,

    Plaintiff,

v.

Case No.
Hon.

UNITED STATES OF AMERICA,
JAMILA TAYLOR, M.D., and
DETROIT HEALTH CARE FOR THE HOMELESS
d/b/a ADVANTAGE HEALTH CENTERS,
Jointly and severally,

    Defendants.
_____/

BRIAN J. McKEEN (P34123)
KENNETH D. LEE (P75886)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, MI 48226
Phone: (313) 961-4400
Facsimile: (313) 961-5985
Email: bjmckeen@mckeenassociates.com
Email: klee@mckeenassociates.com
_____/

## PLAINTIFF'S COMPLAINT, AFFIDAVIT OF MERIT, AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, June Roy, by and through her attorneys, McKeen & Associates, P.C., and for her Complaint, Affidavit of Merit, and Demand for Jury Trial, hereby states the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this claim pursuant to 28 U.S.C. 1346 because the United States is a Defendant.

2. Venue is proper because Defendant, Jamila Taylor, M.D., was a federal employee when she worked for federally funded clinic, Defendant Detroit Health Care for the Homeless d/b/a Advantage Health Center, which is located in Detroit, Michigan.

3. The Notice of Intent to File Claim was filed on or around December 4, 2014.

4. On or about June 14, 2016, the United States denied the administrative claims brought by Plaintiff under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. sections 1346(b), 2401(b), and 2671-80.

## PARTIES

5. Plaintiff, June Roy, was at all times relevant a resident of the County of Wayne, State of Michigan.

6. Defendant, Detroit Health Care for the Homeless d/b/a Advantage Health Centers, was at all times a health institution conducting business in the County of Wayne, State of Michigan and operated by the United States of America, and employed Defendant, Jamila Taylor, M.D.

7. Defendant, Jamila Taylor, M.D., was at all times relevant hereto a licensed and practicing physician, specializing in Family Medicine, conducting business in the County of Wayne, State of Michigan and an employee of the United States of America and Defendant Detroit Health Care for the Homeless d/b/a Advantage Health Centers, and was acting in the course of her employment during her entire treatment of Plaintiff, June Roy.

## **FACTUAL ALLEGATIONS**

8. June Roy, born 06/23/1962, sought her primary medical care from Jamila Taylor, M.D. in the years leading up December 20, 2012.

9. Just prior to a December 20th, 2012 office visit, Ms. Roy presented at the office of Dr. Taylor on October 18th, 2012 with a chief complaint of asthma.

10. Ms. Roy reported that she had recently reported to the Emergency Department for the worst exacerbation of her asthma to date.

11. There were no complaints of any pain or weakness in Ms. Roy's right extremity at that time.

12. Dr. Taylor's assessment was asthma, and refilled Ms. Roy's prescriptions prior to completing the October 18, 2012 office visit.

13. Ms. Roy next presented to the office of Dr. Taylor on December 20, 2012.

14. Ms. Roy's chief complaint was pain in her wrist.

15. The history of present illness was described as 50-year-old female complaining of pain in her right wrist for the past one and a half months.

16. Dr. Taylor related that Ms. Roy indicated the pain was getting increasingly worse, with occasional swelling.

17. Dr. Taylor noted that Ms. Roy had previously attempted pain relief with over the counter NSAIDs with minimal relief.

18. Dr. Taylor did document a history of a left extremity nerve injury that occurred as a result of an on-the-job injury which was surgically repaired in March of 2012.

19. Ms. Roy had indicated that she was compensating for her left arm disability with excessive use of her right arm at that time.

20. Review of systems indicated swelling localized to one or more of the joints of Ms. Roy's right wrist.

21. Specific wrist symptoms included pain which was described as a shooting, tingling, pulling sensation in the right and left upper extremities.

22. Dr. Taylor's assessment was tendonitis with a plan of Ibuprofen, 800 milligram tablets with one tablet orally three times per day to be taken with food.

23. Dr. Taylor raised the idea of using steroid injections if no improvement after one to two months.

24. Dr. Taylor failed to refer Ms. Roy to an orthopedic surgeon at this point in time, and failed to order any diagnostic radiographic testing, including but not limited to, X-rays, CT's, and/or MRI's.

25. In the medical records of the office of Dr. Taylor, it appears as if Ms. Roy's vital signs were charted on January 29th, 2013, and April 11th, 2013; however, there are no progress notes from either of those office visits.

26. On May 23rd, 2013 at 2:48p.m., Ms. Roy was examined by Dr. Taylor.

27. Ms. Roy's chief complaint was "blood pressure."

28. Ms. Roy was noted as a 50-year-old female in follow-up of chronic pain complaints.

29. Ms. Roy's pertinent health history included systemic symptoms, finger symptoms, hand symptoms, wrist symptoms, elbow symptoms, and arm symptoms.

30. Dr. Taylor's assessment was pain in the arms, and it was noted that there was no improvement of symptoms with steroid injection and oral analgesics.

31. During the May 23rd, 2013 office visit, Dr. Taylor indicated that Ms. Roy's general skin appearance was abnormal due to hypopigmentation over the area of the previous steroid

4

injection; however, in the medical records supplied to Plaintiff's counsel, there was no prior office visit documenting a steroid injection.

32. On June 10th, 2013, an office note indicates that Ms. Roy was examined by Michelle Collins, APRN, BC, with the chief complaint of "PAP smear."

33. There is no further notation on this visit regarding any pain and/or follow-up on the complaints of pain in Ms. Roy's right wrist.

34. In August of 2013, Ms. Roy presented to the Emergency Department at Sinai-Grace Hospital with a chief complaint of right wrist pain, and left elbow pain.

35. Ms. Roy described her right wrist pain, which had persisted over the past year.

36. Ms. Roy reported that she had been receiving Cortisone shots in her right wrist for the pain; however, the pain had persisted, and was getting worse.

37. On physical examination Vijaya A Kumar, M.D., the Emergency Room physician, indicated that Ms. Roy did have tenderness in the anatomic snuffbox, with otherwise good range of motion in the right wrist.

38. Dr. Kumar also noted that Ms. Roy also has tenderness in the right wrist, and the distal radioulnar joint.

39. An X-ray was done on the right wrist due to the pain in the snuffbox region, with a differential diagnosis of scaphoid fracture.

40. The X-ray, which was read by radiology as well as the Emergency Room physician, diagnosed a scaphoid bone fracture which was non-displaced.

41. Ms. Roy was discharged home prior to the X-ray interpretation being completed, with instructions to follow-up with an orthopedic surgeon in the next two or three days for treatment of the suspected fracture.

42. On August 10th, 2013, Ms. Roy again presented to the Sinai-Grace Emergency Department under the care of Dr. Kumar.

43. It was noted that Ms. Roy was seen in the Emergency Department the day before, which diagnosed a scaphoid fracture of the right wrist.

44. Ms. Roy did not obtain the result of her X-ray testing on the previous day prior to leaving the hospital.

45. Ms. Roy was discharged on August 10, 2013 with instructions to seek follow-up with her primary care physician, and treatment from an orthopedic surgeon.

46. On August 15th, 2013, Benjamin Rentfrow, D.O., an orthopedic surgeon, consulted regarding Ms. Roy's complaints of right-wrist pain without any history of trauma on the right side.

47. An X-ray that was obtained demonstrated a proximal full scaphoid fracture which was displaced, with no evidence of healing.

48. Dr. Rentfrow indicated that the ends of the fracture pieces looked corticated, indicating this may be a chronic injury.

49. Dr. Rentfrow obtained plain films regarding the right wrist, which demonstrated a proximal full scaphoid fracture with approximately two millimeters of displacement.

50. Dr. Rentfrow's assessment was a right proximal full scaphoid fracture with likely avascular necrosis, and at least non-union.

51. Dr. Rentfrow referred Ms. Roy to Dr. Najarian, as well as Dr. Makhene, for follow-up surgical treatment.

52. On August 26, 2013, Ramotsumi M. Makhene, M.D. consulted on Ms. Roy.

53. Dr. Makhene's impression was (1) right scaphoid non-union, proximal pole; (2) right radial scaphoid arthritis; and (3) probable radial nerve injury on the left side.

54. Dr. Makhene's assessment was that Ms. Roy was going to require excision of the scaphoid, rather than vascularized bone graft.

55. Dr. Makhene also discussed with Ms. Roy removing the lunate and tiquetrum versus four-corner arthrodesis after excision of the scaphoid.

56. On September 30th, 2013, Ms. Roy again presented to the office of Dr. Makhene, at which time Dr. Makhene indicated that the radial scaphoid arthritis involved approximately half of the contact surface of the scaphoid, therefore, vascularized bone grafting and radial styloidectomy will not be of any benefit.

57. Therefore, it was Dr. Makhene's recommendation that a scaphoid excision with a four-corner arthrodesis using a circular plate be performed.

58. Dr. Makhene also recommended bone grafting for the arthrodesis.

59. Ms. Roy presented at Harper University Hospital, Detroit Medical Center for a scheduled orthopedic surgery on October 23rd, 2013.

60. The operation performed was an excision of the scaphoid right four-corner arthrodesis and right posterior interosseous neurectomy with a compression clamp in a proximal to distal direction, which was held in position with six, 2.4 millimeter locking screws.

61. Dr. Makhene indicated that Ms. Roy tolerated the procedure well, and was transferred to the recovery room in stable condition.

62. Ms. Roy presented to Dr. Makhene's clinic on November 4th, 2013, November 18th 2013, December 2nd, 2013, and December 30th, 2013 complaining of persistent pain and decreased range of motion.

63. On December 30th, 2013, Dr. Makhene indicated that Ms. Roy was now two months post-right scaphoid excision and four-corner arthrodesis for right wrist arthritis and scaphoid non-union.

64. At this time, Ms. Roy indicated her pain level was six out of ten.

65. Range of motion in the right wrist was extension of 16 degrees, flexion of 22 degrees, with ulnar deviation at ten degrees, and radial deviation at five degrees.

66. Although the X-ray demonstrated satisfactory alignment of the partial wrist fusion, Dr. Makhene's impression was right scaphoid non-union right wrist arthritis status post-scaphoid excision.

67. Dr. Makhene's plan was to start Ms. Roy on occupational therapy, to wear a right wrist splint, and to take norco for pain relief.

68. In February of 2014, Ms. Roy again presented for an orthopedic follow-up with Dr. Makhene, now four months status post-scaphoid excision.

69. At this time, Ms. Roy described her pain as eight out ten, extension was at 20 degrees flexion, 25 degrees ulnar deviation, and radial deviation, zero degrees.

70. Dr. Makhene indicated that Ms. Roy was going to be referred to a different occupational therapist for continued rehabilitation.

71. On April 21, 2014, Ms. Roy presented to the office of Dr. Makhene for continuing follow-up evaluation.

72. Dr. Makhene noted that he had a discussion with Ms. Roy that there would be a potential for future options of a scar revision in an attempt to help increase range of motion, but that any future surgeries may not resolve Ms. Roy's problems.

73. Dr. Makhene noted that he further discussed with Ms. Roy that her decreased range of motion and pain might be a permanent problem in her right hand.

74. Ms. Roy continues to suffer with a decreased range of motion and pain in her right wrist as a direct result of non-union of her scaphoid fracture related to the avascular necrosis.

## COUNT I: MEDICAL NEGLIGENCE OF JAMILA TAYLOR, M.D.

75. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

76. Jamila Taylor, M.D. was negligent, inter alia, in the following particulars, in that a licensed and practicing physician, specializing in Family Medicine, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by June Roy, had a duty to timely and properly:

   a. Order diagnostic radiographic testing, including but not limited to X-ray, CT and/or MRI studies of Ms. Roy's right wrist and/or right upper extremity in order to properly diagnose Ms. Roy's complaints of persistent right wrist pain;

   b. Refer Ms. Roy to an orthopedic surgeon for further evaluation of Ms. Roy's complaints of persistent right wrist pain;

   c. Include a scaphoid fracture in her differential diagnosis;

   d. Any and all acts of negligence identified through additional discovery.

77. Defendant Jamila Taylor, M.D. did none of these things, and such acts or omissions constitute professional negligence for which the Defendant Jamila Taylor, M.D. is directly liable to Plaintiff.

78. At all times relevant hereto, Defendant, Jamila Taylor, M.D. was an employee, agent, servant, or ostensible agent of Defendant Detroit Health Care for the Homeless d/b/a

9

Advantage Health Centers and the United States of America, who are vicariously liable for the negligence of Defendant, Jamila Taylor, M.D. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

79. As a direct and proximate result of each breach of the standard of care as outlined above, June Roy suffered complications resulting from the delay in treatment of her scaphoid fracture and avascular necrosis.

80. As a consequence of the Defendant's negligence, Plaintiff further claims all elements of damages permitted under Michigan statutory law, Federal law, and the common law, whether known now or whether becoming known during the pendency of this case.

81. The United States of America is liable to Plaintiff under principles of Respondeat Superior and actual agency because it employed Defendant Jamila Taylor, M.D.

WHEREFORE, Plaintiff hereby requests that this Court enter judgment in her favor against Defendants in whatever amount she is found to be entitled plus all allowable interest, costs, and attorney's fees.

## COUNT II: MEDICAL NEGLIGENCE OF DETROIT HEALTH CARE FOR THE HOMELESS d/b/a ADVANTAGE HEALTH CENTERS

82. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

83. Defendant, Detroit Health Care for the Homeless d/b/a Advantage Health Centers, was negligent, inter alia, in the following particulars, in that a licensed and accredited health care facility, through its agents, actual and/or ostensible, servants, and/or employees, including, but not limited to, Jamila Taylor, M.D., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by June Roy, had a duty to:

    a. Select, train, and monitor its employees, servants, agents, actual or ostensible, or its staff of physicians, to ensure that they are competent to perform optimum medical and/or surgical care and comply with the standard of care as described herein;

    b. Provide qualified medical staff with the proper training and ability to meet June Roy's needs, including, but not limited to, the ability to properly prevent, diagnose, manage, and treat persistent wrist pain;

    c. Ensure that appropriate policies and procedures are adopted and followed including, but not limited to, the safe and proper prevention, diagnosis, management, and treatment of wrist pain.

84. As a direct and proximate result of the aforementioned violations in the applicable standard of practice or care by the above-named health care providers, June Roy suffered complications resulting from the delay in treatment of her scaphoid fracture and avascular necrosis.

85. As a consequence of the Defendant's negligence, Plaintiff further claims all elements of damages permitted under Michigan statutory law, Federal law, and the common law, whether known now or whether becoming known during the pendency of this case.

86. The United States of America is liable to Plaintiff under principles of actual agency and Respondeat Superior and actual agency because it employed Defendant Jamila Taylor, M.D and owned and operated Defendant Detroit Health Care for the Homeless d/b/a Advantage Health Centers.

WHEREFORE, Plaintiff hereby requests that this Court enter judgment in her favor against Defendants in whatever amount she is found to be entitled plus all allowable interest, costs, and attorney's fees.

Respectfully Submitted:

McKEEN & ASSOCIATES, P.C.

/s/ Brian J. McKeen
_____
BRIAN J. McKEEN (P34123)
KENNETH D. LEE (P75886)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, MI 48226
Phone: (313) 961-4400
Facsimile: (313) 961-5985
Email: bjmckeen@mckeenassociates.com
Email: klee@mckeenassociates.com

DATED: December 7, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUNE ROY,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
JAMILA TAYLOR, M.D., and
DETROIT HEALTH CARE FOR THE HOMELESS
d/b/a ADVANTAGE HEALTH CENTERS,
Jointly and severally,

    Defendants.

Case No.
Hon.

_____/

BRIAN J. McKEEN (P34123)
KENNETH D. LEE (P75886)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, MI 48226
Phone: (313) 961-4400
Facsimile: (313) 961-5985
Email: bjmckeen@mckeenassociates.com
Email: klee@mckeenassociates.com
_____/

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, June Roy, by and through her attorneys, McKeen & Associates, P.C., and for her Complaint, Affidavit of Merit, and hereby demands a trial by jury in the above entitled cause of action.

                  Respectfully Submitted:

                  McKEEN & ASSOCIATES, P.C.

/s/ Brian J. McKeen
_____
BRIAN J. McKEEN (P34123)
KENNETH D. LEE (P75886)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, MI 48226
Phone: (313) 961-4400
Facsimile: (313) 961-5985
Email: bjmckeen@mckeenassociates.com
Email: klee@mckeenassociates.com

DATED: December 7, 2016

Re: June Roy

### AFFIDAVIT OF MERITORIOUS CLAIM OF FINLEY W. BROWN, JR., M.D.

STATE OF ILLINOIS       )
                        )ss.
COUNTY OF COOK          )

I, Finley W. Brown, Jr., M.D., by this Affidavit, state that during the relevant time period at issue in this matter, I was a licensed and practicing physician, specializing in, and devoting a majority of my professional time for the preceding year to, the clinical practice of Family Medicine, and I attest to the following:

1. I have read the Notice of Intent to File a Claim in this action.

2. I have reviewed all of the medical records provided to me by Plaintiff's Counsel.

3. Jamila Taylor, M.D., a licensed and practicing physician, specializing in Family Medicine, and an agent and/or employee of Detroit Health Care for the Homeless, d/b/a Advantage Health Centers, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by June Roy, had a duty to timely and properly:

   a. Order diagnostic radiographic testing, including but not limited to X-ray, CT and/or MRI studies of Ms. Roy's right wrist and/or right upper extremity in order to properly diagnose Ms. Roy's complaints of persistent right wrist pain;

   b. Refer Ms. Roy to an orthopedic surgeon for further evaluation of Ms. Roy's complaints of persistent right wrist pain;

   c. Include a scaphoid fracture in her differential diagnosis.

4. Detroit Health Care for the Homeless, d/b/a Advantage Health Centers, a duly accredited and licensed health care institution, by and through their agents, actual and/or

ostensible, servants and/or employees, including but not limited to, Jamila Taylor, M.D., which holds itself out to the public as being competent of rendering medical services, when confronted with a patient with the signs and symptoms such as those demonstrated by June Roy, owed a duty to:

    a. Select, train, and monitor its employees, servants, agents, actual or ostensible, or its staff of physicians, to ensure that they are competent to perform optimum medical and/or surgical care and comply with the standard of care as described herein;

    b. Provide qualified medical staff with the proper training and ability to meet June Roy's needs, including, but not limited to, the ability to properly prevent, diagnose, manage, and treat persistent wrist pain;

    c. Ensure that appropriate policies and procedures are adopted and followed including, but not limited to, the safe and proper prevention, diagnosis, management, and treatment of wrist pain.

5. It is my opinion, based upon the available information, as well as my training knowledge, education and experience in Family Medicine, that there was a failure to do those acts listed above, and such omissions constitute violations of the applicable standard of care.

6. In order to have conformed to the standard of care, the above-named should have done those things listed in paragraphs 3 and 4, and the respective subsections above.

7. As a result of each breach of the standard of care as outlined above, June Roy suffered complications resulting from the delay in treatment of her scaphoid fracture and avascular necrosis.

8. This opinion is based upon a review of the information to date and may or may not change upon review of additional materials.

McKeen & Associates, P.C. • 645 Griswold Street, Suite 4200 • Detroit, MI 48226 • (313) 961-4400

_Finley W. Brown, Jr._ (signature)  
Finley W. Brown, Jr., M.D.

Subscribed and sworn to before me on
this  2ND  day of  June  , 2015

_Miriam J. Gonzales_ [Name]  
Notary Public  COOK.  [County]  
My Commission Expires:  August 29, 2016

**MIRIAM J. GONZALES**  
**OFFICIAL SEAL**  
Notary Public - State of Illinois  
My Commission Expires  
August 29, 2016

McKeen & Associates, P.C. • 645 Griswold Street, Suite 4200 • Detroit, MI 48226 • (313) 881-4400

- 3 -